| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **McCARTER & ENGLISH, LLP**<br>Lisa S. Bonsall<br>Peter M. Knob<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, New Jersey 07102<br>Telephone:  (973) 622-4444<br>Facsimile:   (973) 624-7070<br>E-mail: lbonsall@mccarter.com<br>E-mail: pknob@mccarter.com<br><br>*Attorneys for PNC Bank, National Association*<br>*and PNC Equipment Finance, LLC* | |
| In re:<br><br>UNITED BUSINESS FREIGHT FORWARDERS<br>LIMITED LIABILITY COMPANY,<br><br>　　　　　　Debtor. | Case No.: 16-10616 (SLM)<br><br>(Joint Administration Pending)<br><br>Chapter: 11 |
| In re:<br><br>E Z MAILING SERVICES INC.,<br><br>　　　　　　Debtor. | Case No.: 16-10615<br><br>(Joint Administration Pending)<br><br>Chapter: 11 |

**OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN
<u>INTERIM ORDER APPROVING USE OF CASH COLLATERAL</u>**

PNC Bank, National Association ("<u>PNC Bank</u>") and PNC Equipment Finance, LLC

("<u>PNC Finance</u>"; together with PNC Bank, "<u>PNC</u>"), by and through their attorneys, McCarter &

English, LLP, hereby object to the Debtors' Motion [Dkt No. 9] (the "<u>Motion</u>") for entry of an

interim order approving use of cash collateral.

ME1 21827317v.1

1. At 7:00 p.m. last night, the Debtors served a motion for use of PNC's cash collateral and to pay $1.5 million of prepetition debt. In doing so, the Debtor conveniently omits the material facts that led to this bankruptcy. The Debtors have been engaged in activities that PNC believes to be fraudulent, and that make it impossible to know whether anything they say is true. The Debtor should not be permitted to continue to control any money in light of its recent activities, much less given license to make payments on prepetition debt. There has been no disclosure regarding transfers to insiders within the past few weeks or months, no detail regarding its accounts, no information relating to payroll. Frankly, the facts cry out for the appointment of a trustee. The 2 hours of notice provided for this extraordinary relief is inadequate and all requests for immediate relief should be denied until the court and all parties can gain a better understanding of Debtors' financial situation. The Debtors should not be permitted any relief in the meantime, and a trustee should immediately be appointed to monitor the Debtor's activities so that further damage is not done.

**The Bank Debt**

2. PNC loaned funds to Debtor E Z Mailing Services, Inc. ("EZ Mailing"), as set forth in further detail in the Debtors' Motion. PNC is owed approximately **$4,143,252.91** in the aggregate.[1] Of that amount, at least $2,000,000[2] is secured by, among other things, a blanket

---

[1] The obligations and approximate principal amounts owed are as follows:

| Loan/Obligation | Unpaid principal balance |
|---|---|
| Line of credit | $ 1,500,000.00 |
| Term loans/equipment loans | $ 2,143,397.79 |
| Credit card loan | $ 257,185.93 |
| Overdraft liability | $ 242,669.19 |
| **Total** | **$ 4,143,252.91** |

Additional sums are due and PNC reserves all of its rights with respect to all sums due.

lien in favor of PNC Bank on accounts receivable.  PNC Finance is owed an additional approximately $2,143,397.79 secured by trucks and rolling stock.

### **Debtor's Improper Conduct and Material Omissions**

3. The Debtor has engaged in a shell game with money for, so far as PNC can tell, the past few months.  The Motion simply misstates and omits material facts.  While admitting that EZ Mailing overdrew its account at PNC by $1,200,000 (Affidavit of Ajay Aggarwal, [Dkt. No. 10], ¶ 36), the Debtors do not advise the Court that the reason for the overdraft is that EZ Mailing was engaged in a "check-kiting"-type scheme.  EZ Mailing wired $1,200,000 from its account at New York Community Bank (which did not have sufficient funds) to its account at PNC, and spent the funds immediately after the funds were available in the PNC account.  The wire was reversed for insufficient funds in the transferor account but EZ Mailing had already spent the money, and thus EZ Mailing's account became overdrawn by $1,200,000.  EZ Mailing's principal, Vijay Aggarwal, admitted to PNC in person that he "did something that wasn't kosher."

4. After the overdraft, EZ Mailing defaulted on its monthly payments and did not make the payments it promised to make to cure the overdraft.  Nor did it respond to the draft documents negotiated in an effort to reach some agreement regarding forbearance.  Almost two months later, the Debtor still has not fully repaid the $1.2 million check kite overdraw on its PNC account.  In addition to not making promised payment, the Debtor failed to deliver the additional collateral that PNC required, and failed to respond to draft documents.  With two sets of sophisticated counsel, EZ Mailing was well aware of the consequences of ignoring its lender and failing to cure their check kite balance or make the promised payments toward such a cure.

---

[2] The line of credit, credit card loan, and overdraft liability are secured by the accounts receivable.

5.      When PNC did exercise its rights by notifying EZ Mailing's largest account debtors, EZ Mailing's response was deeply disturbing. EZ Mailing said it intended to make the "final payment" of $230,000 to clear its overdraft liability to PNC on Friday January 8 (Aggarwal Aff., ¶ 42), the same day as it planned to cut payroll checks, by issuing all of the checks with insufficient funds in the account – i.e., by "floating" the payroll checks. Specifically, Vijay Aggarwal, one of EZ Mailing's principals, advised PNC that EZ Mailing would make the $230,000 payment to PNC while issuing approximately $475,000 in payroll checks, even though it did not have adequate funds in its account to cover all of those checks, on the hope that the majority of the payroll checks would not be cashed until the following week and by that time EZ Mailing would have received checks from some of its customers. The Debtor intended to cut over $700,000 in checks with only $18,000 in its account, on the hope that checks (not cash) would come from customers and that employees would not present their payroll checks when received.

6.      EZ Mailing threatened to file for bankruptcy if PNC would not agree to EZ Mailing's scheme, and then for the first time revealed that PNC's collateral was in fact significantly impaired by undisclosed charge-backs arising from prior fraudulent activity by EZ Mailing on its largest customer, Forever 21. Specifically, EZ Mailing had entered into an undisclosed Refund Agreement with Forever 21 in October 2014 to repay $15 million that Forever 21 claimed was owed for fraudulent charges by EZ Mailing, to be made in quarterly payments of $750,000. In fact, EZ Mailing actively concealed the liability by providing materially false financial statements omitting the $15 million liability, no doubt to induce PNC to continue to loan money to the Debtor.

7.      Based on the foregoing, PNC is extremely concerned about the court allowing *any*

ME1 21827317v.1

emergent relief.  Given EZ Mailing's propensity to engage in wire fraud, submit false information and conceal a massive liability from its primary lender, there can be no faith in anything that the Debtors say.  The Debtors have not been forthcoming with information, and the information they have provided has been inaccurate and misleading.  The Debtors' statements and information simply cannot be trusted, and they should not be permitted to continue to be in control of any accounts.  It is utterly critical that there be complete visibility into all of their operations and accounts.  No relief should be granted until there has been a full opportunity to exchange information and brief the issues.

8.    Additionally, there has been no disclosure regarding insider transfers.  It is PNC's belief that the Aggarwals have continued to draw $300,000 each in annual salary, have received hundreds of thousands of transfers in the past few months, have had their personal AMEX cards paid by the company and have had their family on the payroll.  All of these issues need to be explored before current management can be permitted any right to deal with cash, much less the right to continue making prepetition payments in violation of the Bankruptcy Code.

9.    There are also substantial questions with respect to the Debtors' proposed cash collateral budget.  The Debtors claim they will generate net cash flow of only $98,845 over the next month (Motion, Ex. A).  Among other issues, it is unclear if this forecasted cash flow takes into account payment of more than $750,000 that the Debtors claim must be paid to supposedly "critical vendors."  Dkt. No. 4-1, p. 4.  If the cash collateral budget does not take into account those payments of more than $750,000, then the Debtors' forecasted cash flow will be negative by more than $600,000 during only the first month of operations – an alarming rate of collateral dissipation.

10.    Finally, with respect to Debtors' calculation of PNC's supposed equity cushion of

5

ME1 21827317v.1

$2,476,840 (Motion, Ex. B), that figure is based on receivables having a "face value" of $4,468,840, including $1,591,000 in receivables owed by Forever 21, which appears to be materially inaccurate and misleading. EZ Mailing owes Forever 21 $11 million, which would wipe out this receivable entirely. It failed to make its $750,000 quarterly payment that was due to Forever 21 on January 11 under the Refund Agreement, giving Forever 21 a right of setoff such that the actual amount due is substantially reduced, by <u>at least</u> $750,000. In addition, there is no disclosure as to what percentage of those receivables are inter-company, and no aging to see how long they have been outstanding. In sum, while the Debtors claim the receivables have a "face value" of $4,468,840, there is simply no way of knowing whether this information is accurate, especially in light of the Debtors' history, but it is clear that, at a minimum, the Forever 21 receivable should be completely eliminated. It is unknown what other issues are lurking in Debtors' receivables, and their claim of any equity cushion cannot be trusted.

11.     This Objection is being submitted in advance of the imminent hearing this morning, and PNC reserves the right to submit a further Objection to the Motion and all other relief requested by the Debtors raising other, different, and further grounds for objection.

**McCARTER & ENGLISH, LLP**
Attorneys for PNC Bank, National Association and PNC Equipment Finance, LLC

By: /s/ Lisa S. Bonsall, Esq.
  Lisa S. Bonsall, Esq.

Dated: January 14, 2016